**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**AMATECH GROUP LIMITED,**

      **Plaintiff,**

    v.                              Case No. 1:21–cv–00406
                                      JUDGE DOUGLAS R. COLE

**FEDERAL CARD SERVICES, LLC,**
**et al.,**

      **Defendants.**

## OPINION AND ORDER

This cause is before the Court pursuant to Plaintiff AmaTech Group Limited's ("AmaTech") Motion For Leave To Serve (Doc. 21). AmaTech seeks permission for substitution of service of process on Defendant Gerald Linden, whom AmaTech believes to reside in Romania. To date, AmaTech has made unsuccessful attempts to serve Linden at two addresses in the United States. (*See* Docs. 16 & 19, Summons Returned Unexecuted as to Gerald Linden). Accordingly, AmaTech wishes to serve Linden via email under Federal Rule of Civil Procedure Rule 4(f)(3).

As more fully explained in AmaTech's Complaint (Doc. 1), Linden previously acted as AmaTech's attorney. So AmaTech first attempted to serve Linden at the Florida address Linden listed in his most recent engagement letter with AmaTech. That failed. Then AmaTech tried to serve Linden at the Ohio address Linden listed on file with the United States Patent and Trademark Office ("USPTO"). That too came to no avail.

Continuing its efforts to inform Linden of this suit, AmaTech emailed Linden at an email address listed on Linden's professional website and on his USPTO filings. That message asked Linden to provide a valid mailing address. Although Linden did not respond to AmaTech's email, he later made a filing at the USPTO on behalf of Defendant Federal Card Services, LLC, that addressed this litigation and responded to the allegations in AmaTech's Complaint. (*See* Applicant's Resp. to Pet., Doc. 20-6, #1074–91). Given the contents of Linden's filing with the USPTO, AmaTech asserts that Linden is aware of this suit, but has been avoiding service.

In support of its Motion, AmaTech also provides a declaration from Mustafa Lotya, a former AmaTech employee. (Lotya Decl., Doc. 20-1). Lotya states that he has "strong reason to believe that [Linden] currently resides somewhere in Romania" because "on numerous occasions, Mr. Linden referred to his life in Romania, including a home situated in Transylvania [a region in central Romania]." (*Id.* at #162). Additionally, Lotya notes that "AmaTech has wire-transferred remittance to Mr. Linden at a bank in Sibiu, Romania." (*Id.*). Citing Lotya's testimony, AmaTech argues it has "strong reason to believe that [Linden] now permanently resides in Romania." (Mot. for Leave, Doc. 21, #1247).

Asserting that Liden is likely residing in an unknown foreign address, i.e., somewhere in Romania, AmaTech contends Rule of Civil Procedure Rule 4(f) applies to service here. That rule provides three avenues for serving an individual in a foreign country: (1) "by any internationally agreed means of service that is reasonably calculated to give notice," (Rule 4(f)(1)); (2) "if there is no internationally agreed

2

means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice," (Rule 4(f)(2)); and (3) "by other means not prohibited by international agreement, as the court orders," (Rule 4(f)(3)). AmaTech further argues that "there is not a hierarchy among the subsections of Rule 4(f)." (Mot. for Leave, Doc. 21, #1244). If true, it means that the Court is free to permit substitute service under Rule 4(f)(3) without considering Rules 4(f)(1) and 4(f)(2) (i.e., without addressing the threshold question of whether Romania and the United States have an agreed upon means of service). And that is what AmaTech asks the Court to do here—follow Rule 4(f)(3). (*Id.*).

The Court agrees with AmaTech that case law suggests that Rule 4(f)(3) may, at least as a technicality, be invoked without first considering Rules 4(f)(1) and 4(f)(2). *See Lexmark Int'l Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 260 (S.D. Ohio 2013) ("Notably, courts have consistently found that there is not a hierarchy among the subsections of Rule 4(f) … As such, a plaintiff is not required to first exhaust the methods contemplated by Rule 4(f)(1) and (2) before petitioning the Court for permission to use alternative means under Rule 4(f)(3).") (collecting cases).

That said, there are also cases that take a somewhat different view. One such case casts Rule 4(f)(3) as a "safety valve for unanticipated situations." *See, e.g. Midmark Corp. v. Janak Healthcare Private Ltd.,* No. 3:14-cv-088, 2014 WL 1764704, at \*2 (S.D. Ohio, May 1, 2014) ("Federal Rule of Civil Procedure 4(f)(3) … 'serves as a safety valve for unanticipated situations' … [and] should be viewed as a 'final effort to make service when other means have failed.'") (first quoting 4B Charles Alan

3

Wright & Arthur R. Miller, Federal Practice & Procedure § 1133 at 313 (3d ed. 2002), then quoting *Marcantonio v. Primorsk Shipping Corp.*, 206 F. Supp. 2d 54, 58 (D. Mass. 2002)). Another case charts somewhat of a middle course. *See Slay v. IB Travelin, Inc.*, No. 2:18-CV-02728, 2019 WL 572877, at *3 (W.D. Tenn. Feb. 12, 2019). *Slay* cites "the advisory committee notes to Rule 4," which "emphasize that alternative service under 4(f)(3) is justified only when there is a good reason for deviating from the usual methods of international service of process, such as cases of urgency or when following internationally prescribed methods of service would be futile." *Id.* The *Slay* court observed that a court could "follow the spirit of the advisory committee's admonishment by requiring the party seeking 4(f)(3) authorization to show 'that reasonable efforts to serve the defendant have already been made, and that the Court's intervention will avoid further burdensome or futile attempts at service.'" *Id.* (quoting *United States v. Alphatec Spine, Inc.*, No. 1:13-cv-586, 2016 WL 1182260, at *2 (S.D. Ohio Mar. 28, 2016)). All said, at least some courts have found it advisable to "follow the spirit" of the advisory committee's recommendation to proceed with caution when using Rule 4(f)(3) without first considering Rules 4(f)(1) and 4(f)(2). *Id.*

Mindful of these various approaches to the role that Rule 4(f)(3) plays in the service of process hierarchy, the Court begins by considering whether service under Rule 4(f)(1) of 4(f)(2) might work. Answering the former requires the Court to first assess whether there is an "internationally agree means of service" between the United States and Romania. There is. Romania, like the United States, is a party to

4

the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Convention").[1] So, if Linden is in Romania, that would be the international agreement at issue. But, under Fed. R. Civ. P. 4(f)(1), the "agreed means of service" under the Hague Convention do not include email. *See* Hague Convention, Art. X (identifying means of service). Thus, Rule 4(f)(1), absent some separate agreement between Romania and the United States to permit email as a means of service, would not allow for such service.

Next, consider Rule 4(f)(2). That rule allows for service by "a method that is reasonably calculated to give notice" in either of two circumstances: (1) "if there is no internationally agreed means," or (2) if an international agreement allows but does not specify other means. Start with the latter. The Hague Convention "allows, but does not specify" other means of service. *See* Hague Convention, Art. XI. So any method "that is reasonably calculated to give notice" should suffice, and email would seem to satisfy that requirement. But one wrinkle remains: Article I of the Hague Convention specifies that "[t]his Convention shall not apply where the address of the person to be served with the document is not known." And here, it appears that Linden's actual physical address is not known, at least not with perfect certainty. Arguably, then, the Hague Convention does not apply on the facts here, which in turn would imply that "there is no internationally agreed means." Fed. R. Civ. P. 4(f)(2). Once again, then, any method reasonably calculated to give notice—including

---

[1] *See* Status Table, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited August 17, 2021).

5

email—should suffice. But there remains one other possibility. Linden may not reside in Romania at all, in which case the Rule 4(f)(2) analysis arguably would turn on his actual country of residence, meaning that the Court cannot definitively answer the Rule 4(f)(2) question here.

Given that uncertainty, the Court elects to consider Rule 4(f)(3). Under the plain language of that Rule, when it applies (more on that below) "there are only two requirements for service under Rule 4(f)(3), which are (1) it must be directed by the court, and (2) it must not be prohibited by international agreement." *Lexmark*, 291 F.R.D. at 174. As to the former, AmaTech sought permission to serve by email from the Court, so if the Court grants that motion, the directed-by-the-court element is met.

That leaves the not-prohibited-by-international-agreement element. That element is met here, too. As the court stated in *Lexmark*, "[v]arious courts have agreed that service by email is not prohibited by the Hague Convention." 295 F.R.D. at 261. At the very least, a signatory nation to the Hague Convention must expressly object to a specific form of alternative service, like email, in order to bar that method of service. *See Noco Co. v. Zhejiang Quingyou Elec. Comm. Co.*, 338 F.R.D. 100, 106 (N.D. Ohio 2021). So, absent an objection from a given Hague signatory nation, "service through electronic channels (such as email …) is not prohibited by the Hague Convention." *Id.* And Romania has not made such an objection to email service. *See* Romania – Central Authority & Practical Information, Hague Conference of Private

6

International Law, (listing no opposition to Article 10 of the Hague Convention)[2]; *see also Louis Vuitton Malletier v. aaalvshop.com*, No. 19-CIV-61986-RAR, 2019 WL 7911372, at *1 (S.D. Fl. Aug. 13, 2019) (finding email service valid under Rule 4(f)(3) because Romania has not objected to email service). "As such, a court may order service by email, where appropriate." *Lexmark*, 295 F.R.D. at 262.

But, before addressing that "appropriateness" question, the Court considers one more potential pitfall. In stating that the Hague Convention does not prohibit email, the Court is assuming that the Hague Convention applies. As noted above, though, perhaps Liden has misled AmaTech about his location and is instead residing in a different country (which may or may not be a Hague signatory, and may or may not prohibit email service). That uncertainty might seem to jeopardize the Court's ability to determine whether an international agreement "prohibits" a particular form of service for Rule 4(f)(3) purposes. But case law suggests that the serving party need only "make reasonably diligent efforts to learn the defendant's mailing address" for Rule 4(f) purposes. *Luxottica Grp. S.p.A. v. P'ships and Unincorporated Assocs. Identified on Schedule A*, 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019). If a plaintiff does so, case law further suggests that the plaintiff can rely on the country-of-residence information it uncovers. In *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1013 (9th Cir. 2002), for example, the plaintiff suspected, but could not confirm, that the defendant had an address in Costa Rica. Despite the lack of airtight evidence as to defendant's residence country, the Ninth Circuit upheld the district court's grant

---

[2] Available at https://www.hcch.net/en/states/authorities/details3/?aid=271 (last visited August 17, 2021).

of leave to serve the defendant via email, under Rule 4(f)(3), relying on its determination that Costa Rica (the likely country of residence) did not prohibit email service.

In short, it appears that a well-founded belief that a party is residing in a country that does not prohibit email service suffices for purposes of Rule 4(f)(3). And AmaTech met the diligent search standard here by (1) attempting to serve Linden at two different addresses, (2) sending him an email asking for a valid address, and (3) obtaining a sworn declaration from a former AmaTech employee regarding Linden's dealings with the company. Based on the declaration that AmaTech submitted, the Court finds that AmaTech has a well-founded belief that Linden resides in Romania. Thus, the Court will treat the Hague Convention as the applicable international agreement for Rule 4(f)(3) purposes, and as already noted that agreement does not prohibit email service.[3]

The appeals court in *Rio Properties* also discussed when reliance on service under this Rule is appropriate. It explained that one such instance is when a moving party can "demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention" in the face of an "inability to serve an elusive international defendant, striving to evade service of process." *Id*. at 1016. This

---

[3] Because Rule 4(f)(3) applies here and AmaTech has only requested permission to serve Linden pursuant to that Rule, the Court declines to determine whether Rule 4(f)(2) would ultimately permit service here. The Court observes, however, that if a well-founded belief as to the defendant's location, based on a diligent search, suffices to identify the relevant international agreement for Rule 4(f)(3) purposes, there is no immediately apparent reason why that same belief should not work for the same purpose under Rule 4(f)(2).

Court concludes that a similar situation appears to exist here. Linden seems to be striving, either actively or passively, to evade AmaTech's efforts to serve him.

That leaves only one remaining hurdle—to satisfy Rule 4(f)(3), the "method of service of process must also comport with constitutional notions of due process." *Rio Props.*, 284 F.3d at 1016. That means the substitute service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1016–17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Considering that AmaTech apparently reached Linden at the very email address it now seeks to use for service of process (and, at minimum, Linden repeatedly used the email address in his professional capacity as an attorney), the Court has little doubt that serving Linden via email would apprise Linden of this suit in accord with due process. *See Lexmark*, 291 F.R.D. at 262 (permitting email service under Rule 4(f)(3) on international defendants with which plaintiff corresponded using the same email address). And given AmaTech's multiple unsuccessful attempts to serve Linden, the Court finds that substitute service is warranted. Thus, the Court concludes that AmaTech may serve Linden via email under Rule 4(f)(3).

For the reasons stated above, the Court **GRANTS** Plaintiff's Motion For Leave To Serve (Doc. 21). It is **ORDERED** that AmaTech is authorized to serve Linden with the Summons and Complaint using Linden's known email address as stated in the Motion.

**SO ORDERED.**

August 19, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**