## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**AMATECH GROUP LIMITED,**

      **Plaintiff,**

            **Case No. 1:21-cv-406**

    **v.**              **JUDGE DOUGLAS R. COLE**

**FEDERAL CARD SERVICES,**
**LLC, et al.,**

      **Defendants.**

### OPINION & ORDER

This cause comes before the Court on Defendant Gerald Linden's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process (Doc. 35).

Linden is a patent agent. For years, he has told the U.S. Patent and Trademark Office ("USPTO") that his business location for his patent-related activities is Mayfield Heights, Ohio, which is where the PTO thus sent correspondence relating to the patent applications that Linden prosecutes—including the applications at issue in this action. Indeed, if one searches for Linden on the USPTO agent database, it still lists him as "accepting new clients" at that address today. *See Find A Patent Practitioner*, USPTO: OFFICE OF ENROLLMENT AND DISCIPLINE, https://oedci.uspto.gov/OEDCI/practitionerSearchEntry (last visited Dec. 28, 2021). In this action, AmaTech Group Limited ("AmaTech") is suing Linden for claims arising out of his actions as a patent agent. Yet, Linden maintains that this Court lacks personal jurisdiction over him. According to Linden, he is a long-term resident

of Europe, which is where he actually does his work as a patent agent, and the Ohio address is just a "mail drop." Based on that, he contends that he lacks the constitutionally-required minimum contacts with Ohio needed to give rise to jurisdiction. For the reasons discussed below, the Court **DENIES** Linden's Motion to Dismiss (Doc. 35).

## BACKGROUND

For purposes of a Rule 12(b)(2) motion to dismiss, the Court accepts as true the factual allegations in the Complaint, and construes the affidavits relating jurisdictional facts in a light most favorable to the plaintiff. Thus, the Court reports those averments here, but with the disclaimer that these facts are not yet established, and may never be.

Plaintiff AmaTech, an Irish corporation, develops technologies which it incorporates into metal contactless-payment cards. (Compl., Doc. 1, #1[1], 4). This suit stems from the alleged misappropriation of certain of those technologies—which AmaTech contends are trade secrets—by Defendants David Finn and Federal Card Services ("FCS").

Finn was AmaTech's CEO from 2005 until AmaTech was acquired by a new parent company in 2018. (*Id.* at #1). After the acquisition, AmaTech briefly retained Finn as a consultant, but Finn left to join FCS, an Ohio LLC and AmaTech competitor, in July 2019. (*Id.*). AmaTech alleges that after his departure, Finn, with the help of another AmaTech employee, began furnishing FCS with information

---

[1] Refers to PAGEID #.

regarding AmaTech's proprietary methods and procedures. (*Id.* at #1–2, 11). FCS then began filing patent applications which, in AmaTech's view, contained AmaTech's trade secrets. (*See, e.g.*, *id.* at #20, 22).

That is where Defendant Gerald Linden comes into the picture. Linden is a registered patent agent. According to AmaTech, FCS used Linden to prosecute these offending patent applications. (*See id.* at #33). Linden's involvement troubled AmaTech, as Linden had acted as AmaTech's patent "attorney" for nearly fourteen years.[2] In that capacity, Linden had filed and prosecuted nearly 100 patent applications directed toward AmaTech's metal card technologies at the USPTO. (*Id.* at #13). Indeed, as recently as August 2019—after Finn had joined FCS—Linden had executed an engagement letter with AmaTech for continued "legal services" to include "preparing, filing[] and prosecuting US patent applications." (*Id.* at #14).

AmaTech alleges that on the same day Linden executed the engagement letter agreeing to provide these services to AmaTech, he also filed a provisional patent application on behalf of FCS directed to "dual-interface metal smartcard technology." (*Id.*). Linden went on to file dozens of patent applications on behalf of "Finn and/or FCS, all the while continuing to prosecute patent applications on AmaTech's behalf." (*Id.*). Some of these applications, though not all, incorporated what AmaTech believes to be trade secret information. (*See id.* at #20).

---

[2] The Court puts "attorney" in quotes because it appears that, although AmaTech at one time believed Linden to be an attorney (AmaTech alleges that is because Linden said he was an attorney), AmaTech later learned (as further described below) that, at the time he was prosecuting the AmaTech patent applications relating to this suit, Linden had retired his law license. (*See* Compl., Doc. 1, #35–36).

AmaTech alleges that Linden knew or should have known, given his extensive work with AmaTech over the years, that some of the applications filed on behalf of Finn or FCS contained AmaTech's confidential information. (*Id.* at #33–34). It even alleges that some of the applications filed by Linden on behalf of FCS "disparage[]" and distinguish "AmaTech's prior patent applications, which [Linden] also prepared," leaving him "with the unethical task of arguing for the patentability of FCS'[s] claims over AmaTech's prior publication." (*Id.* at #34–35).

In the course of its investigation into this activity, AmaTech also learned that Linden had not been a duly licensed attorney since 2006, despite having held himself out to AmaTech as such. (*Id.* at #35).[3] Although his website suggests that he is admitted to practice in Pennsylvania and Connecticut, AmaTech alleges he retired from the practice of law in those states in 1994 and 2006, respectively. (*Id.* at #35–36). Nor is Linden admitted to practice in Florida, which he identified as his state of residence in his engagement letter with AmaTech. (*Id.* at #36).

Based on these allegations, AmaTech asserts a number of claims against Linden, FCS, and Finn. Most salient for purposes of this Opinion, however, are those claims against Linden: breach of contract, breach of fiduciary duty, and fraud. (*Id.* at #46–51).

---

[3] A person need not be an attorney to prosecute a patent application on behalf of a client at the USPTO. Rather, registered patent agents can also undertake such activities. At least as of October 7, 2021, the USPTO website listed Linden as an "Attorney," although his status has since been updated to read "Agent." (*Compare* Khariton Decl., Attach. A, Doc. 38-1, #1562, *with Find A Patent Practitioner*, USPTO: OFFICE OF ENROLLMENT AND DISCIPLINE, https://oedci.uspto.gov/OEDCI/practitionerSearchEntry (last visited Dec. 28, 2021) (search "Linden" in "Last name" field)).

As to those claims, AmaTech asserts that the Court has personal jurisdiction over Linden because Linden:

> purposefully entered into a contract with FCS to provide FCS with legal services and representation, knowing FCS to be a resident of this District. On information and belief, in the course of his representation of FCS, Mr. Linden has made a number of purposeful contacts with the State of Ohio and this District, including communicating with FCS by mail, email, and/or telephone; negotiating the terms of his representation; advising FCS about the status and progress of FCS'[s] patent filings before the USPTO; requesting and receiving authorization from FCS for various actions; demanding and receiving payment from FCS; and instructing the USPTO to deliver correspondence concerning FCS'[s] patent filings to an address in the State of Ohio, care of D.A. Stauffer Patent Services LLC, a provider of legal services with offices in Cleveland, Ohio. AmaTech's claims against Mr. Linden arise, in whole or in part, from his representation of FCS, a resident of this District, which he undertook concurrently with his representation of, and in breach of his obligations to, AmaTech.

(*Id.* at #5–6).

Linden filed the instant Motion challenging jurisdiction and service on September 9, 2021 (Mot. to Dismiss for Lack of Personal Jurisdiction and Insufficient Service of Process ("Mot."), Doc. 35). AmaTech responded in opposition on October 7 ("Resp.," Doc. 38), and Linden replied in support on October 21 ("Reply," Doc. 41). The matter is now ripe.

## LEGAL STANDARD

Faced with a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(2), a court has three options: it (1) "may determine the motion on the basis of affidavits alone"; (2) "permit discovery in aid of the motion"; or (3) "conduct an evidentiary hearing on the merits of the motion." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 505 (6th Cir. 2020) (quoting *Serras v. First Tenn. Bank Nat. Ass'n,*

875 F.2d 1212, 1214 (6th Cir. 1989)). If the Court decides the motion on the pleadings and affidavits alone, a plaintiff need only make a prima facie showing of personal jurisdiction. *Id.* (quoting *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012)). In evaluating whether the plaintiff has met this "relatively slight" burden, the court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). And the court "does not weigh the controverting assertions of the party seeking dismissal," so as to "prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (citing *Serras*, 875 F.2d at 1214).

Here, the Court is deciding the motion without conducting an evidentiary hearing or permitting jurisdictional discovery—the parties requested neither—and therefore considers the pleadings and affidavits in a light most favorable to AmaTech. Thus, consistent with the authority above, insofar as the parties aver conflicting accounts of the salient facts, the Court resolves those conflicts in AmaTech's favor. (That being said, the Court notes that there is remarkably little disagreement as to those facts here.) And with that version of the facts in mind, "[d]ismissal in this procedural posture is proper only if all the specific facts which the plaintiff ... alleges collectively fail to state a prima facie case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir. 1997) (quoting *Theunissen*, 935 F.2d at 1458).

6

## LAW AND ANALYIS

### A.    Personal Jurisdiction, Generally.

Personal jurisdiction comes in two flavors: general and specific. A forum may exercise "general jurisdiction" over a non-resident defendant whose contacts with the forum state are so "'continuous and systematic' as to render [the defendant] essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[4] "Specific jurisdiction," on the other hand, applies when a defendant's contacts with the forum state are fewer or less intimate, but where the legal action "arise[s] out of or relate[s] to" those contacts. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017)). This case involves the latter form of personal jurisdiction.

The Court has subject matter jurisdiction over this action based on federal question jurisdiction as to one of the counts (although not a count asserted against Linden), *see* 28 U.S.C. § 1331, combined with supplemental jurisdiction over the attendant state law claims (including those counts asserted against Linden), *see* 28 U.S.C. § 1367. When a federal question provides the basis for subject matter

---

[4] Although the "paradigm forum for the exercise of general jurisdiction" over an individual defendant is the defendant's domicile, *Goodyear*, 564 U.S. at 924, a court may nonetheless exercise general jurisdiction over a non-resident individual where the defendant's contacts with the forum are continuous and systematic. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (holding "constant and extensive personal and business connections with Texas throughout [the defendant's] adult life" supported exercise of general personal jurisdiction over Oklahoma resident). The precise contours of general jurisdiction over individuals matters little here, however, because, as explained further below, this case does not turn on an exercise of general jurisdiction.

jurisdiction, a federal court may exercise personal jurisdiction over a defendant "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) (internal citations omitted)). Accordingly, the Court starts its analysis with Ohio's long-arm statute, Ohio Rev. Code § 2307.382, and then turns to the Due Process Clause.

### 1.  Exercising Personal Jurisdiction Over Linden Is Consistent With Ohio's Long-Arm Statute.

Before April 7, 2021, Ohio's long-arm statute consisted of a list of enumerated acts set forth in § 2307.382(A), followed by an admonition in § 2307.382(C) that "[w]hen jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." Ohio Rev. Code Ann. § 2307.382 (West 2019). Not surprisingly, given the statute's plain language, courts routinely noted that Ohio's long-arm statute did not extend jurisdiction to the fullest extent that the Due Process Clause allows. *See, e.g.*, *Schneider*, 669 F.3d at 699 (quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008)); *Hoover Co. v. Robeson Indus. Corp.*, 904 F. Supp. 671, 673 (N.D. Ohio 1995) ("It has since become clear that Ohio state courts do not interpret Ohio Rev. Code § 2307.382(A) to extend personal jurisdiction to the limits of due process." (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 546 (Ohio 1994))). Indeed, Ohio's Supreme Court expressly noted

that the long-arm statute reflected a "two-part analysis," which obligated a court to "(1) determine whether the state's 'long-arm' statute and the applicable Civil Rule confer[ed] personal jurisdiction, and if so, (2) whether granting jurisdiction under the statute and rule would deprive the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution." *Goldstein*, 638 N.E.2d at 543, 545 n.1 (citing *U.S. Sprint Commc'ns Co., Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1051 (Ohio 1994)). According to that court, merging these inquiries (i.e., treating the long-arm statute as coterminous with the Due Process Clause) would render the first "nugatory." *Id.* at 545 n.1.

Recent events, however, call this understanding of Ohio's long-arm jurisdiction into question. The Ohio General Assembly has amended Ohio's long-arm statute, effective as of April 7, 2021. *See* Am. H.B. 272, 133d Gen. Assemb. (Ohio 2020); Am. Sub. S.B. 10, 133d Gen. Assemb. (Ohio 2020). Because Amatech filed this action on June 14, 2021, (Compl., Doc. 1, #58), the Court must consider the effect of the amendment on the exercise of jurisdiction here. *See Smith v. Swaffer*, No. 1:20-CV-1848, 2021 WL 4596922, at *10 (N.D. Ohio Oct. 7, 2021) ("Jurisdiction is determined as of the commencement of the action." (citing *Mollan v. Torrance*, 22 U.S. (9 Wheat.) 537, 539–40 (1824))). As amended, subsection (C)—which previously limited jurisdiction to "cause[s] of action arising from acts enumerated in" subsection (A)— now provides that, "[i]n addition to a court's exercise of personal jurisdiction under subsection (A) of this section, a court may exercise personal jurisdiction over a person

on any basis consistent with the Ohio Constitution and the United States Constitution." Ohio Rev. Code § 2307.382(C).

Neither the Supreme Court of Ohio nor any Ohio appellate courts have yet had occasion to interpret this new language. Several federal district courts, though, have done so, falling into one of two camps. Most of the courts to address the amended language have concluded that Ohio's long-arm statute now extends personal jurisdiction to the fullest extent that the U.S. Constitution permits. *See C.T. v. Red Roof Inns, Inc.*, No. 2:19-CV-5384, 2021 WL 2942483, at *10 (S.D. Ohio July 1, 2021) ("Thus, even if the TVPRA does not confer nationwide service of process, this Court could still exercise jurisdiction over a suit if it comported with Ohio's long-arm statute and the U.S. Constitution, which are now coextensive."); *Swaffer*, 2021 WL 4596922, at *10 ("In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution."); *NOCO Co. v. Shenzhen Valuelink E-Com. Co.*, No. 1:20 CV 49, 2021 WL 4699088, at *2 (N.D. Ohio July 22, 2021) ("Ohio recently amended its long-arm statute … to mirror the constitutional limitations for personal jurisdiction …."). If that is correct, of course, the "two-part analysis," *see Goldstein*, 638 N.E.2d at 545 n.1, is now a one-part analysis, and the Court need only inquire whether the exercise of personal jurisdiction comports with the limits of the Due Process Clause.

On the other hand, at least one court in this district has concluded that the purpose of the new language in § 2307.382(C) is merely to allow for "general jurisdiction" over non-resident defendants in appropriate circumstances. *Premier*

*Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, No. 3:21-CV-14, 2021 WL 1964613, at *2 n.2 (S.D. Ohio May 17, 2021). According to that court, in cases where, as here, a party is asserting some form of *specific* jurisdiction, the party must still show that the suit arises from one of the enumerated acts in subsection (A). *Id.* ("This interpretation does not, however, collapse the long-arm statute's specific jurisdiction test into the Federal standard. Plaintiffs … asserting that a court has specific jurisdiction over a defendant must still demonstrate their claim arose from one of the enumerated factors.").[5] In other words, the new amendments to subsection (C) only come into play if the party is instead asserting *general* jurisdiction.

For present purposes, the Court need not decide which view regarding the amendments to subsection (C) is correct. That is because one of the enumerated categories listed in subsection (A) is "a cause of action arising from the person's … transacting business in this state," whether "directly or by an agent." Ohio Rev. Code § 2307.382(A)(1). As an Ohio appellate court has explained, "[t]o 'transact' under [Ohio Rev. Code §] 2307.382(A)(1) means 'to prosecute negotiations; to carry on business; to have dealings.'" *ATA Logistics, Inc. v. Empire Container Freight Station,*

---

[5] Although there exists some inconsistency in federal court opinions on the subject, the Sixth Circuit had repeatedly recognized that, prior to amendment of the long-arm statute, Ohio did not recognize a "general" personal jurisdiction over non-residents. *See Conn v. Zakharov*, 667 F.3d 705, 717 n.6 (6th Cir. 2012) (noting inconsistency in this respect but stating that the "pro-general jurisdiction" cases rested on questionable ground). Post-amendment, it seems likely that Ohio courts would recognize such a general personal jurisdiction. *See Premier Premier Prop. Sales Ltd.*, 2021 WL 1964613, at *2 n.2 ("The Ohio legislature recently revised the state's long-arm statute to permit general jurisdiction over non-resident defendants where it was not recognized before."). For purposes of this opinion, the Court need not decide the propriety of exercising "general" personal jurisdiction, because both parties center their arguments on specific jurisdiction, and in any case the record would not support such an exercise.

*Inc.*, No. CA2020-01-006, 2020 WL 4932794, at *3 (Ohio Ct. App. Aug. 24, 2020) (quoting *Dahlhausen v. Aldred*, 932 N.E.2d 949, 954 (Ohio Ct. App. 2010)). One "factor relevant to transacting business is whether the parties conducted their negotiations and communications in Ohio." *MJM Holdings Inc. v. Sims*, 130 N.E.3d 1093, 1099 (Ohio Ct. App. 2019) (citing *Barnabus Consulting Ltd. v. Riverside Health Sys., Inc.*, No. 07AP–1014, 2008 WL 2588579, at *3 (Ohio Ct. App. June 30, 2008). Here, Linden has "transacted business" in Ohio through his activities in connection with prosecuting patent applications here. In particular, he has provided the USPTO with an Ohio address as the location where that office should "negotiat[e] and communicat[e]" with him, *see MJM Holdings*, 130 N.E.3d at 1099, regarding such applications. And the USPTO has done so. That suffices.

Linden makes two arguments to the contrary. First, he says it is not *him* who is transacting business here, but merely a colleague who acts as a mail drop and forwards information to him. (*See* Mot., Doc. 35, #1516, 1524). But that person is acting as Lindner's agent for purposes of handling Linden's communications from the USPTO, and an agent's activities suffice for purposes of satisfying the enumerated categories in the long-arm statute. *See* Ohio Rev. Code § 2307.382(A) (conferring personal jurisdiction "over a person who acts directly *or by an agent*") (emphasis added). Second, Linden claims that he never *sent* the USPTO anything from Ohio, but rather just received information and requests *from* the USPTO. (*See* Mot., Doc. 35, #1516, 1524). But that distinction does not cut it in the Court's view. Linden may have electronically filed his materials with the USPTO, but he was doing so *in*

12

*response to* the information that the USPTO sent to him in Ohio (and, it bears remembering, the USPTO sent it to him there at his request). Thus, Linden was engaging in patent prosecution activities by way of his Ohio address, even if he was not personally doing anything in the state.

And there is little question that the causes of action here "aris[e] from" his patent prosecution activities. *See* Ohio Rev. Code § 2307.382(A). AmaTech alleges that at the same time Linden was prosecuting patents (using an Ohio address) on AmaTech's behalf, he was also prosecuting patents (using the same Ohio address) on FCS's behalf, and that this constituted an impermissible conflict of interest in violation of duties that he owed AmaTech. (Resp., Doc. 38, #1547–48). To be sure, AmaTech's allegations may prove false, but there seems little question that the claims arise from Linden's Ohio-associated patent-prosecution activities.

In short, the Court concludes that Linden's use of an Ohio address to communicate with the USPTO constitutes "transacting business" in the State of Ohio as to those activities, and further concludes that the claims at issue here "arise from" those activities. Thus, AmaTech has met the "relatively slight" burden, *Am. Greetings Corp.*, 839 F.2d at 1169, needed to make a prima facie showing that Linden is subject to jurisdiction under the Ohio long-arm statute, which Linden has failed to rebut.

### 2. AmaTech Has Established That Exercising Personal Jurisdiction Over Linden Comports With Due Process.

Of course, it is not enough that Linden's activities in the State bring him within the contours of Ohio's long-arm statute. AmaTech also must show that the Court's exercise of jurisdiction over Linden would comport with the Due Process Clause. But

13

the Court concludes that AmaTech has made the necessary showing on this front, as well.

"When determining whether a district court's exercise of personal jurisdiction would offend due process, '[t]he relevant inquiry is whether … the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice.'" *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Theunissen*, 935 F.2d at 1459). As the Supreme Court recently reiterated, "a strong 'relationship among the defendant, the forum, and the litigation'" is the "'essential foundation' of specific jurisdiction." *Ford Motor Co.*, 141 S. Ct. at 1021 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). The Sixth Circuit outlined a three-pronged test to guide the due process inquiry in *Southern Machine Co. v. Mohasco Industries, Inc.*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968). The Court addresses each of these three prongs in succession.

### a. Linden Has Purposefully Availed Himself Of The Privilege Of Acting In Ohio.

The first prong of the test is the "*sine qua non* for *in personam* jurisdiction." *Id.* at 381–82. It asks whether the defendant has "purposefully avail[ed] [himself] of the

privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (internal citations omitted). Importantly, the Sixth Circuit has found that the "purposeful availment" prong of the constitutional due process inquiry is coextensive with the "transacting business" standard of Ohio's long-arm statute. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006).

Here, AmaTech alleges Linden purposefully availed himself of the benefits and protections of Ohio law by: (1) entering a contract with FCS, an Ohio LLC; (2) preparing and filing several dozen patent applications on FCS's behalf; (3) contacting FCS regarding patent filings and payment; (4) holding himself out to the USPTO as having an Ohio address; and (5) using that address (and a patent agent there) to facilitate his patent prosecution business. (*See* Compl., Doc. 1, #5–6). As already noted above, the Court agrees with AmaTech that, at least with regard to the last two items on that list, those activities satisfy the statutory test for "transacting business" in Ohio. Thus, under Sixth Circuit precedent, *see Burnshire*, 198 F. App'x at 432, they likewise satisfy the "purposeful availment" prong of the constitutional due process test.

Linden argues that, to the contrary, his contacts with Ohio—or, as he might prefer to frame them, with FCS—are just the sort of "random, fortuitous" contacts that fail to evince purposeful availment. In support of that position, Linden relies on *Calphalon Corporation v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), for the proposition that "the mere existence of a contract between Linden and FCS [is] not [] enough to confer personal jurisdiction" over him. (Mot., Doc. 35, #1517). Linden's statement of law is obviously correct. *See Burger King*, 471 U.S. at 478 (holding that a "contract with an out-of-state party *alone*" does not "automatically establish sufficient minimum contacts"). And, admittedly, *Calphalon* lends some support to the notion that Linden's contacts with FCS (as alleged) would not meet the requirements of due process. In that case, the Sixth Circuit held that the plaintiff had failed to show the defendant purposefully availed himself of Ohio despite the defendant's: distributor agreement with an Ohio choice of law provision, duties to report market conditions to the plaintiff in Ohio, somewhat regular telephone and fax contacts with the plaintiff, two visits to plaintiff's offices in Ohio, and the defendant's sending a letter threatening litigation to Ohio. *Calphalon*, 228 F.3d at 722–23.

In light of *Calphalon*, AmaTech's limited allegations regarding Linden's relationship with FCS perhaps present a close question whether Linden purposefully availed himself of the forum. As this Court has previously observed, "to create personal jurisdiction, out-of-state defendants must purposefully avail themselves of … the forum state. If instead they are choosing to direct their activities toward a particular person, and that person merely happens to live in the forum state, that is

16

not enough." *Baker v. Bensalz Prods., Inc.*, No. 1:18-CV-757, 2020 WL 1083606 at *9 (S.D. Ohio Mar. 6, 2020), on reconsideration, 478 F. Supp. 3d 618 (S.D. Ohio 2020).

But, while there are some similarities between this case and *Calphalon* regarding the nature of the Linden-FCS relationship, Linden's focus on that relationship ignores an important distinction between *Calphalon* and this case. Namely, here AmaTech alleges that Linden maintains an address in Ohio that he uses to conduct his patent prosecution business generally. Moreover, this address is registered with the USPTO and publicly searchable on the USPTO website. And on that front, Linden does not contest that he uses such an address, nor that it is so registered with the USPTO (and he cannot, given that the information is, as of this writing, still available on the USPTO's website). Rather, he says since 2010 he has used the Ohio address of an "acquaintance," Dwight Stauffer, "as a mail drop to receive very occasional mail from" the USPTO. (Linden Decl., Doc. 35, #1524). This "very occasional mail" from the USPTO includes final patent documents, which Stauffer forwards directly to clients. (*Id.*). And, when the USPTO sends reminders for Linden, Stauffer forwards those via email to Linden. (*Id.*).

Despite Linden's efforts to downplay the significance of this Ohio "mail drop" for jurisdictional purposes, the Court is not convinced. If anything, his description strengthens the inference that he is using the Ohio address as a facet of his patent-prosecution business. For example, Linden confirms that Stauffer (acting in Ohio) is facilitating Linden's patent work by forwarding correspondence to clients and to Linden, on Linden's behalf. Indeed, as to that latter point, construing the Complaint

most favorably to AmaTech (as the Court must), the Complaint appears to allege an agency relationship between Stauffer and Linden. Because the actions of an agent are attributable to the principal for purposes of the purposeful availment prong, *see Chattanooga Corp. v. Klingler*, 704 F.2d 903, 907 (6th Cir. 1983), Stauffer's Ohio-based patent prosecution activities are attributable to Linden, despite Linden's physical absence.

In sum, AmaTech need not rely on the alleged contract with FCS to establish Linden's purposeful availment, and thus Linden's citation to *Calphalon* cannot carry his Motion. And Linden's other contacts with Ohio are not "random, fortuitous, or attenuated." He has, by his own admission, used an Ohio address to facilitate patent prosecution activities for approximately eleven years. He has listed that address in a publicly searchable database and represented to a federal agency that it could reach him there (and that he was "accepting new clients" through that address). The duration and nature of this contact made it reasonably foreseeable (whether Linden in fact foresaw it or not) that Linden could be haled into an Ohio court based on his patent-related activities. As such, this prong is satisfied.

### b. AmaTech's Claims Against Linden "Arise From" Linden's Ohio Contacts.

Classically, the second prong of the *Southern Machine* test asks whether the cause of action asserted "arise[s] from the defendant's activities" in the forum state. *Southern Machine*, 401 F.2d at 381. However, the Sixth Circuit has articulated the standard "in a number of different ways, such as whether the causes of action were 'made possible by' or 'lie in the wake of' the defendant's contacts, or whether the

causes of action are 'related to' or 'connected with'" those contacts. *Air Products*, 503 F.3d at 553 (citations omitted). Whatever the formulation, this "arising from" test is a "lenient standard." *Id.* (citing *Bird*, 289 F.3d at 875).

Given the Court's conclusion regarding Ohio's long-arm statute, it should come as no surprise that the Court also finds AmaTech's claims "arise from" Linden's Ohio-based activities from a due process perspective.[6] Here, AmaTech asserts against Linden breach of contract, breach of fiduciary duty, and fraud. The Court evaluates these claims separately. *See Round Rock Rsch. LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 974 (D. Del. 2013) ("[P]ersonal jurisdiction is evaluated on a claim-by-claim basis." (citing *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007))).

Start with the breach of contract. It is useful to precisely recount AmaTech's breach of contract allegations. In its Complaint, AmaTech asserts that Linden's breaches consisted of:

> preparing and filing one or more patent applications on [FCS and Mr. Finn's] behalf containing information that Mr. Linden knew or should have known constituted AmaTech's confidential trade secret information and his failing to advise AmaTech of this misappropriation[;] … preparing and filing one or more patent applications on their behalf disparaging AmaTech's patent applications,

---

[6] The Sixth Circuit suggested in *Brunner v. Hampson*, 441 F.3d 457, 466–67 (6th Cir. 2006), and cited approvingly in *Burnshire*, 198 F. App'x at 430, the notion that this prong of the due process inquiry requires only a "but-for" relationship, while Ohio's long-arm statute requires a more restrictive proximate cause relationship. The court in *Burnshire*, having concluded that the contacts in that case satisfied Ohio's long-arm statute, thus found it unnecessary to conduct the parallel due process analysis. *Id.* at 432 n.2. However, the Sixth Circuit appears to have since walked back its broad view of "arising from," concluding in *Beydoun*, 768 F.3d at 507–08, that "more than mere but-for causation is required to support a finding of personal jurisdiction. To the contrary, the plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." In any case, this causal relationship as a constitutional requirement is certainly no *more* restrictive than that required by Ohio's long-arm statute.

which Mr. Linden previously prepared, filed, and prosecuted on AmaTech's behalf in the course of his representation of AmaTech[;] … [and] filing one or more patent applications on their behalf with claims directed to the same subject matter, or obvious variations thereof, as that taught in AmaTech's prior patent applications, which Mr. Linden also previously prepared, filed, and prosecuted on AmaTech's behalf in the course of his representation of AmaTech.

(Compl., Doc. 1, #46–47).

To be sure, the case at hand presents a somewhat unusual situation from a jurisdictional perspective, in that AmaTech, the party with whom Linden entered the contract-in-suit, is not an Ohio resident. That is, where a defendant purposefully avails itself of the forum state by reaching out and creating a continuing contractual obligation to a forum-resident plaintiff—as is true in most contract-based personal jurisdiction cases—a breach of that obligation (the contract) "naturally arises from the defendant's activities" in the state. *Tharo Systems, Inc.*, 196 F. App'x at 371 (citing *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998)); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 229 (6th Cir. 1972) ("Defendant's … entering of a contractual relationship with an Ohio corporation [] is necessarily the very soil from which the action for breach grew. The intimate relationship between the jurisdictional basis and the cause of action … cannot be denied here.").

That is not the situation here. Rather, the action for breach here "grew" out of a contract between AmaTech and Linden, the formation of which has little or no connection to Ohio. Linden seizes on this distinction, emphasizing that the contract AmaTech asserts was negotiated, executed, and signed in Europe, and that neither party to it resides in Ohio. But the plaintiff's residency is "not a separate requirement, and lack of residence [in the forum] will not defeat jurisdiction

20

established on the basis of defendant's contacts." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984). And while creation of the contract is, of course, absolutely necessary to AmaTech's cause of action, so too is the conduct that allegedly *breached* that contract; one cannot pursue a breach of contract claim without alleging a breach. *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 31 (2d Cir. 1996) ("Two elements give rise to a breach of contract claim: (i) a contract between the parties and (ii) an act allegedly in violation of that agreement. Both are necessary elements of the claim; neither is sufficient by itself.").

Regarding that latter point, as AmaTech observes, although the central contractual relationship bears no relationship to Ohio, "much of the *breaching conduct* occurred in Ohio." (Resp., Doc. 38, #1553). This includes, according to AmaTech, Linden's representation of FCS, dealings with FCS's personnel in Ohio, and use of an Ohio address and patent agent to conduct the "conflicting representation before the USPTO." (*Id.* at #1548).

Again, while Linden's contacts with FCS may not have carried the day for AmaTech, it is the latter contact that dooms Linden's motion. AmaTech's claim for breach centers on Linden's patent prosecution business, and Linden's mailing address in Ohio is integral to that business. For eleven years, he has directed the USPTO to mail correspondence, including at least final printed patents and "reminders" (reminders, one must presume, to act on prosecution-related deadlines) to this address. (Linden Decl., Doc. 35, #1524). This correspondence is forwarded to

21

appropriate recipients, including clients and Linden himself, by another patent agent.

Linden also argues that these claims do not arise from his Ohio contacts because AmaTech suffered no damage in Ohio. However, it is not necessary that the breach have caused injury in Ohio to satisfy the constitutional requirements for personal jurisdiction. *Bulso v. O'Shea*, 730 F. App'x 347, 351 (6th Cir. 2018). Rather, [t]he personal-jurisdiction analysis … hinges on whether the defendant['s] conduct connects them to [the forum], not on where [plaintiff] experienced those consequences." *Id.* (citing *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). That AmaTech felt the consequence of Linden's breach in Ireland does not convince the Court that the claim for breach did not arise from actions that are Ohio-related.

For these reasons, the Court finds that AmaTech's breach of contract claims arise from Linden's Ohio contacts—the same contacts by which he purposefully availed himself of the benefits and protections of Ohio law. And Linden seems to concede that, if personal jurisdiction is appropriate as to the breach of contract claim, that same result would apply to AmaTech's remaining claims for breach of fiduciary duty and fraud. (Reply, Doc. 41, #1622 ("Plaintiff's breach of fiduciary duty claim arises from the same contractual arrangement and the fraud claim likewise relates to representations in that letter.")).

Even had he not made that concession, the Court concludes that personal jurisdiction over these claims would be proper. The Court agrees that the breach of fiduciary duty is premised on obligations (and violations) of the AmaTech-Linden

22

relationship, and AmaTech alleges much of the same conduct with respect to the breach of fiduciary duty claim as it does for its breach of contract claim. (i.e., filing patent applications on behalf of Finn and FCS and failing to disclose the alleged misappropriation). (*See* Compl., Doc. 1, #49). This allegedly tortious conduct occurred in Ohio, *see* Ohio Rev. Code § 2307.382(A)(3), via Linden's Ohio-based patent-prosecution activities.

The fraud claim presents a slightly closer case. AmaTech alleges in that count that Linden practiced fraud on AmaTech by failing to disclose that he was not a duly licensed attorney for much of the time he represented AmaTech. AmaTech fails to allege that Linden's omission of his licensure status occurred in Ohio or damaged any party in Ohio, and the relation of this omission to Linden's Ohio-based prosecution activities is somewhat more tenuous than in the other two claims. Rather, it appears that Linden made the "representation" regarding his licensure status on his website. (Compl., Doc. 1, #35). But, again, Linden has failed to make any explicit argument opposing the exercise of jurisdiction with respect to this claim, and the Court considers any such argument waived.

### c.    It Would Be Reasonable To Subject Linden To Personal Jurisdiction In Ohio.

The Court now turns to the third *Southern Machine* prong. *See LAK, Inc.*, 885 F.2d at 1303 ("[E]ach [*Southern Machine*] criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."). This prong requires that the defendant have a substantial enough connection with the forum state to make the exercise of

jurisdiction over the defendant "reasonable." *See Southern Mach. Co.*, 401 F.2d at 381. But in making that determination, the Court starts with a presumption. According to the Sixth Circuit, where the first two prongs of the *Southern Machine* inquiry are met, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First Nat. Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982) (citing *Southern Machine Co.*, 401 F.2d at 384). In the Court's view, this case is not so unusual as to overcome this inference.

The Supreme Court has articulated several factors a court should consider in determining "reasonableness": (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

As to the first, the Court acknowledges that litigating this matter in Ohio will certainly impose some burden on Linden, as it is undisputed that he now resides in Romania. On the other hand, Linden manages to represent at least two clients, including one Ohio-based, before a U.S. federal agency, using an Ohio address. To be sure, Linden's interface with the USPTO has largely been electronic. But, particularly since the advent of the Covid-19 pandemic, technology likewise has rapidly eased the burden of participating in geographically disparate judicial

proceedings. Discovery is largely electronic, which has been the case for some time. But now, parties also routinely conduct depositions by Zoom or other video-conferencing technology, and federal courts are likewise hearing arguments on motions, and even holding evidentiary hearings, or conducting mediations, using that same technology.

Second, Ohio has an interest in adjudicating the dispute, as FCS, an Ohio resident, and Linden, a patent agent conducting long-term ongoing business in the state, are defendants. Moreover, Linden holds himself out as Ohio-based to the USPTO, and that address is discoverable by those searching for assistance with patent prosecution.

As to the third factor, AmaTech certainly has an interest in obtaining convenient and effective relief, although this factor is likely the same in every case; the mere fact that it is convenient for AmaTech to sue Linden, FCS, and Finn in Ohio thus should not carry too much weight. The fourth and fifth factors weigh slightly in favor of exercising jurisdiction. Indeed, it is not clear that any other state would have a stronger interest in adjudicating the matter, and litigating this matter piecemeal (e.g., an action against FCS here and an action against Linden elsewhere) would serve little purpose given the intertwined nature of the underlying facts.

In sum, exercising personal jurisdiction over Linden comports with the requirements of due process, and the Court therefore **DENIES** his motion in that regard.

25

**B.    Linden's Arguments Regarding Insufficient Service Of Process Fail.**

Linden also asks the Court to dismiss the claims against him for insufficient service of process. (Mot., Doc. 35, #1519). He contends that service via email, which the Court permitted by its August 19, 2021 Order ("Order," Doc. 32), is insufficient per Fed. R. Civ. P. 4 and therefore exercising personal jurisdiction over him violates due process. The Court disagrees.

AmaTech points out, and the Court notes, that Linden could have entered a limited appearance to oppose AmaTech's motion for leave to serve without waiving his Rule 12(b)(2) or 12(b)(5) defenses. *Calista Enterprises Ltd. v. Tenza Trading Ltd.*, 40 F. Supp. 3d 1371, 1377 (D. Or. 2014); *Thompson v. Galetka*, 42 F. App'x 397, 399 (10th Cir. 2002). From that, AmaTech argues that Linden's instant motion is procedurally defective and suggests it should have been filed as a motion for reconsideration pursuant to Fed. R. Civ. P. 60(b). That Rule, however, is not a viable procedural vehicle for the relief Linden seeks because it applies only to a "final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). It does not permit relief from an interlocutory order (i.e., an order not subject to immediate appeal). *Whatever it Takes Transmission & Parts, Inc. v. Cap. Core, Inc.*, No. 2:10-CV-72, 2014 WL 12653727, at *2 (S.D. Ohio Jan. 6, 2014) (citing *McWhorter v. ELSEA, Inc.*, No. 2:00-cv-473, 2006 WL 3483964, at *2 (S.D. Ohio Nov. 30, 2006)). Because the Court's August 19 Order was not final, Rule 60(b) is inapplicable.

"However, '[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.'" *Id.* (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*,

89 F. App'x 949, 959 (6th Cir. 2004)). While reconsideration should not be used to "re-litigate issues previously considered," *id.* (quotation omitted), the Court notes that this issue was not previously "litigated," insofar as Linden did not file papers in opposition.

While the Court has authority to revisit its previous Order, though, the Court concludes that Linden's arguments do not persuade. In that Order, the Court permitted AmaTech to serve Linden via email pursuant to Fed. R. Civ. P. 4(f)(3). Linden asserts that Art. X of the Hague Convention does not provide for email service, and that Art. XI, which identifies alternative means, states only that it "shall not prevent" contracting states from making alternative agreements. Because the U.S. and Romania have made no such alternative agreement, he argues that Rule 4(f)(2) is inapplicable. (Mot., Doc. 35, #1520). Unfortunately, such an argument—even if it were correct as an interpretive matter, which the Court doubts—does nothing for Linden, because, in its previous Order, "the Court decline[d] to determine whether Rule 4(f)(2) would ultimately permit service" on Linden. (Order, Doc. 32, #1493 n.3). Rather, the Court found the necessary authority in Rule 4(f)(3), which permits service outside of the United States "by other means not prohibited by international agreement, as the court orders."

On that count, Linden argues that there is a hierarchy to 4(f)—i.e., that the Court must consider Rules 4(f)(1) and (2) first—and that the Court's reliance on Rule 4(f)(3) was therefore inconsistent with that Rule's purpose as a "safety valve." (Mot., Doc. 35, #1521). While the Court did acknowledge the existence of some authority to

that effect, it nevertheless "agree[d] with AmaTech that case law suggests that Rule 4(f)(3) may … be invoked without first considering Rules 4(f)(1) and 4(f)(2)." (Order, Doc. 32, #1488). In his more recent filing, Linden offers no new authority that would cause the Court to reconsider that analysis. *See Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009) (listing as justification for reconsidering interlocutory order "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice" (quoting *Rodriguez*, 89 F. App'x at 959)). And, in any case, "[m]indful of the[] various approaches" taken by other courts, the Court *did* consider 4(f)(1) and 4(f)(2); it found that the former would not allow for email service and that the latter was inconclusive, given uncertainty as to Linden's precise address. (Order, Doc. 32, #1489–91).

The Court is also confused by Linden's argument that the Court should not have invoked Rule 4(f)(3) because "as in this case, parties can routinely and completely avoid attempts at international service per Rule 4(f)(1)." (Mot., Doc. 35, #1521). If Linden means to concede that he has been dodging attempts at service, this seems all the more reason to allow service under Rule 4(f)(3). The Court noted that AmaTech had unsuccessfully attempted service in Florida and Ohio and had requested a mailing address from Linden (via email) without response. (Order, Doc. 32, #1486–87). These good-faith attempts to apprise Linden of the litigation, combined with a well-founded belief of his residence in Romania, satisfied the Court that service via 4(f)(3) was proper. (*Id.* at #1492–93).

Finally, Linden argues that email service "is expressly prohibited by the [Hague] Convention unless agreed between two or more Contracting States." (Mot., Doc. 35, #1521). Not so. "As the court stated in *Lexmark*, '[v]arious courts have agreed that service by email is not prohibited by the Hague Convention.'" (Order, Doc. 32, #1491 (quoting *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261 (S.D. Ohio 2013))). "At the very least, a signatory nation to the Hague Convention must expressly object to a specific form of alternative service, like email, in order to bar that method of service." (*Id.* (citing *Noco Co. v. Zhejiang Quingyou Elec. Comm. Co.*, 338 F.R.D. 100, 106 (N.D. Ohio 2021))).

Linden has supplied no reason for the Court to upend its previous Order, and the Court thus declines to do so. Accordingly, the Court **DENIES** Linden's motion to dismiss for insufficient service of process.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Linden's Motion to Dismiss (Doc. 35).

      **SO ORDERED.**

January 5, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

29