**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| AMATECH GROUP LIMITED, | : |
| *Plaintiff,* | : |
| | : Case No. 1:21-cv-406 |
| v. | : |
| | : Judge Jeffery P. Hopkins |
| FEDERAL CARD SERVICES, LLC, *et al.*, | : |
| | : |
| *Defendants.* | : |

---

## OPINION AND ORDER

---

Pending before the Court is Plaintiff AmaTech Group Limited's ("AmaTech") Motion for Default Judgment against Defendant Gerald Linden ("Linden"). Doc. 60. For the reasons stated below, AmaTech's Motion for Default Judgment (Doc. 60) is **GRANTED in part and DENIED in part**. Specifically, the Court finds that AmaTech is entitled to Default Judgment. But, because AmaTech has not provided sufficient documentation from which this Court can determine the damages amount, the Court denies without prejudice, AmaTech's requested damages amount. "[E]ven upon default, a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008). "The burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l Group Merch. Servs. v. Ninna, Inc.*, 655 F.Supp.2d 177, 189 (E.D.N.Y. 2009) (*citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

Consistent with this order, then, AmaTech may submit specific evidence showing the quantum of damages and the basis upon which those damages are sought, including any

documentation, detailed affidavit(s), and supplemental briefing by December 20, 2024, at which time the Court will decide whether AmaTech has met its burden of proof to establish recovery or whether further evidentiary proceedings will be ordered.

## I.    BACKGROUND

In a previous Opinion and Order entered in the case, Judge Douglas R. Cole, thoroughly details AmaTech and Linden's longstanding business relationship and the reasons why it eventually soured and led to this litigation, knowledge of which is presumed. Doc. 48. A summary of the facts as relevant to the Motion currently before the Court are set forth below. In brief, AmaTech's relationship with Linden goes back nearly two decades to 2006. Doc. 54, ¶¶ 4–7, 51–53. Twenty years ago, and up to the filing of this lawsuit, Linden acted as AmaTech's attorney and agent preparing and prosecuting patent applications pending before the United States Patent and Trademark Office ("USPTO") on behalf of the company. *Id.* For our purposes, the focus in these proceeding is on the Attorney Engagement Letter ("Engagement Letter") which the parties signed on August 12, 2019, that in essence formulated an agreement for Linden to represent AmaTech free of any "conflicts of interest." *Id.* ¶¶ 54–55, 123. In the Engagement Letter, Linden expressly agreed that "he ha[d] no conflicts of interest with other clients of his." *Id.* That statement turned out to be completely false.

The parties' relationship began to unravel when AmaTech discovered Linden's misrepresentations about his law licensure status and dual representation of other clients before the USTPO which it claims seriously hurt the company's business financially. According to AmaTech, even though Linden held himself out as a duly licensed "attorney," in reality his law licenses in two states had already expired and he never bothered to inform

2

AmaTech. *Id.* ¶¶ 130, 138; *also see* Doc. 48. Adding insult to injury, on the same day Linden signed the Engagement Letter to represent AmaTech, he also filed a competing provisional patent application with the USPTO on behalf of another client, Defendant David Finn, AmaTech's former CEO, who in the month before had left AmaTech to work for one of its competitors, Defendant Federal Card Services, LLC ("FCS").[1] *Id.* ¶¶ 31–32, 56. Further injuring its business, AmaTech also alleges that the year after Linden signed their Engagement Letter, he filed more than fifty competing patent applications for Finn and FCS—all while continuing to prosecute patent applications as AmaTech's legal representative. *Id.* ¶¶ 57–58.

Upon discovering Linden's disloyalty, on June 14, 2021, AmaTech filed suit against him and Defendants David Finn, FCS, and another co-defendant (who was later dismissed and is unrelated to the outcome in these proceedings). Doc. 1; *see infra* note 2. In Counts VIII, IX, and X of the original Complaint, AmaTech asserted claims against Linden for breach of

---

[1] As earlier noted by this Court, an individual need not be an attorney to prosecute patent applications on behalf of clients at the USPTO. Doc. 48, PageID 2257, n.3. Non attorneys who are registered patent agents can undertake the same representation. At least as of November 18, 2024, the USPTO website no longer lists Linden as a "Patent Attorney" but as a " Patent Agent." Noteworthy here, however, are the disciplinary proceedings that the Office of Enrollment and Discipline for the USPTO undertook against Linden for his conduct in this case. In that proceeding, the USPTO issued a Final Order that included a Notice of Reprimand, which states, in pertinent part:

> This notice concerns Gerald E. Linden, a registered practitioner (Reg. No. 30,282) and a U.S. citizen residing in Romania. Mr. Linden has been publicly reprimanded by the Director of the United States Patent & Trademark Office ("USPTO" or "Office") for violating 37 C.F.R. §§ 1 1.104(a)(l), 11.107, 11.109(a), and 1 1.1 16(a)(l ).

> Mr. Linden prepared and filed patent applications for Company 2, including claims that he knew, or reasonably should have known, were not patentably distinct from inventions in patents he previously obtained for Company 1. Mr. Linden acknowledged that (a) he was engaged by Company 2 to develop a portfolio of patents, some of which would be directed to "improvements" over the underlying patents owned by Company 1 and (b) he did not obtain the informed consent of Company 1 to provide such patent law services to Company 2.

Find A Patent Practitioner, UNITED STATES PATENT AND TRADEMARK OFFICE: OFFICE OF ENROLLMENT AND DISCIPLINE: https://oedci.uspto.gov/OEDCI/practitionerSearchEntry (search "Linden" in "Last name" field) (last visited Nov. 18, 2024).

contract, breach of fiduciary duty, and fraud. Doc. 54, ¶¶ 208–38. Subsequently, on September 9, 2021, Linden, through counsel, moved to dismiss the claims lodged against him based on a lack of personal jurisdiction and insufficient service of process. Doc. 35. However, this Court denied Linden's motion in its entirety, in the order entered on January 5, 2022. Doc. 48.

After Linden's Motion to Dismiss was denied on January 5, he had fourteen (14) days—or until January 19, 2022—to respond to AmaTech's Complaint under Fed. R. Civ. P. 12(a)(4)(A). He did not. In fact, Linden has yet to serve any responsive pleading to that Complaint other than his initial challenge to jurisdiction and service of process which were rejected by this Court. Accordingly, on January 21, 2022, AmaTech requested that the Clerk of this Court enter default against Linden. Doc. 50. But before the Clerk could enter a default, on February 7, 2022, AmaTech filed an Amended Complaint, asserting many of the same claims for relief as those presented in the original Complaint. Doc. 54. Unsurprisingly, Linden again failed to respond, and on February 23, 2022, the Clerk of this Court entered a default on the second application against Linden on the Amended Complaint.[2] Doc. 55.

---

[2] The Court notes that the Amended Complaint is substantially similar in all respects as it relates to Linden, *i.e.,* the claims and allegations against Linden did not change from the original Complaint to the Amended Complaint. *Compare* Doc. 1 *with* Doc. 54. The Amended Complaint merely removed Defendant Darren Molloy, whose case had settled, as a co-defendant and removed all allegations and counts against him, as he was dismissed from the case on October 12, 2021. Doc. 40.

While AmaTech applied for default against Linden before the Amended Complaint was filed (*see* Doc. 50), the Clerk did not enter default until after the deadline for Linden to respond to the Amended Complaint had passed. Doc. 55 (entering default against Linden 16 days after the Amended Complaint was filed, or two days after the deadline imposed by Fed. R. Civ. P. 15(a)(3)). Thus, the entry of default was valid under Fed. R. Civ. P. 55(a).

Meanwhile, AmaTech reached settlements with all of the other defendants named in the Amended Complaint with the exception of Linden.[3] As noted, Linden has not responded, nor has he sought to defend against the remaining claims asserted against him personally in the Amended Complaint in the more than two years that have elapsed since the Clerk entered a default back on February 23, 2022. Doc. 55. Subsequently, on April 25, 2023, AmaTech filed the instant Motion for Default Judgment. Doc. 60. AmaTech's Motion for Default Judgment is now ripe for adjudication.[4]

## II.    LAW AND ANALYSIS

For a default judgment to be entered, a district court must possess both subject matter and personal jurisdiction over the nonresponsive party—in this case Linden—the only remaining defendant in the case. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case."); *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010) ("Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment."); *Kuhlman v. McDonnell*, No. 1:20-cv-510, 2022 WL 407240, at *2 (S.D. Ohio Feb. 10, 2022).

---

[3] On April 11, 2022, this Court entered a Notation Order granting AmaTech's and FCS's Joint Motion to Dismiss FCS as a co-defendant. Doc. 57. Subsequently, on September 19, 2022, the Court entered a Notation Order granting AmaTech's and Finn's Joint Motion to Dismiss Finn as a co-defendant. Doc. 58.

[4] Many of the delays in this case were caused by circumstances beyond anyone's control. Upon the appointment of Hon. Jeffery P. Hopkins on December 16, 2022, this case was reassigned for all further proceedings from Hon. Douglas R. Cole in an order signed by then Chief Judge Algenon L. Marbley on December 21, 2022. This motion was one among more than two hundred others pending in cases reassigned to the undersigned. Doc. 59

5

Additionally, the trial court must be satisfied that the facts in the complaint state a claim upon which relief against the putative defendant may be granted. *Harrison v. Bailey*, No. 95-6263, 107 F.3d 870 (Table), 1997 WL 49955, at *1 (6th Cir. Feb. 6, 1997) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."); *Anderson v. Johnson*, No. 98-1931, 194 F.3d 1311 (Table), 1999 WL 1023753, at *2 (6th Cir. Nov. 4, 1999) ("Even if a default has been entered against a party, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."); *Parallax Advanced Rsch. Corp. v. SPG Inst., Inc.*, No. 3:21-cv-133, 2021 WL 3634739, at *2 (S.D. Ohio Aug. 17, 2021) ("[A] default judgment fails as a matter of law if the plaintiff's complaint does not assert a plausible claim upon which relief can be granted.").

Under the circumstances, AmaTech also has the important burden of showing that the well-pleaded factual allegations in its Amended Complaint establish liability with regard to each claim upon which relief by default judgment is being sought. *Nat'l Auto Grp., Inc. v. Van Devere, Inc.*, 5:20-cv-2543, 2021 WL 1857143, at *4 (N.D. Ohio May 10, 2021) (collecting cases). As a final proposition, the Sixth Circuit has cautioned lower courts to carefully weigh several factors announced in *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002)—the so-called *Russell* factors—before granting a motion for default judgment in favor of the plaintiff, including: "1) [the] possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits."

6

As noted, AmaTech filed the Motion seeking to have this Court enter an order for default judgment against Linden on Counts VIII, IX, and X of the Amended Complaint for breach of contract, breach of fiduciary duty, and fraud, respectively. *See* Doc. 60. In connection with each of these Counts, the Clerk's Default was entered against Linden on February 23, 2022. Doc. 55. The case is poised for a determination of AmaTech's request for a default judgment. But before deciding whether to grant that request the Court must first determine: (1) if it has subject matter jurisdiction over the action and personal jurisdiction over Linden; (2) whether the Amended Complaint states a claim for relief against Linden; (3) whether the *Russell* factors support default judgment; and (4) if damages are warranted based on the record before the Court. The Court will address each of these items in turn.

A. **Jurisdiction.**

In Judge Cole's comprehensive Opinion and Order finding service over Linden constitutionally proper, the Court likewise addressed and found personal jurisdiction over Linden proper. *See* Doc. 48, PageID 2278 ("In sum, exercising personal jurisdiction over Linden comports with the requirements of due process."); *see also Legacy Roofing Servs. LLC v. Fusco*, 710 F. Supp. 3d 553, 564 (N.D. Ohio 2024) ("Under the law of the case doctrine, courts should usually not 'reconsider a matter once resolved in a continuing proceeding.' The law of the case doctrine seeks 'to ensure that the *same* issue presented a second time in the *same* case in the *same* court should lead to the same result.'") (quoting *Howe v. City of Akron*, 801 F.3d 718, 739 (6th Cir. 2015)). At a minimum, also, the Court has subject matter jurisdiction over Linden based on the diversity of citizenship between AmaTech and Linden and the amount in controversy exceeding the threshold dollar amount established by Congress. Under 28 U.S.C. § 1332, a district court has original jurisdiction where "the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs," and involves "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; [or] (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties . . . " *U.S. Motors v. GM Eur.*, 551 F.3d 420, 422 (6th Cir. 2008) (quoting 28 U.S.C. § 1332(a)).

Here, all the § 1332 factors have been met. AmaTech, as an Irish corporation with a principal place of business in Galway, Ireland, is a citizen of a foreign state[5] (Doc. 54, ¶ 9) and Linden is a citizen of the State of Florida. *Id.* ¶ 13. Moreover, the amount in controversy stated in the Amended Complaint well exceeds the sum of $75,000 set out in the statute. Here, also, AmaTech is asking the Court to award monetary damages in the amount of $778,950.63 from Linden related to the various claims asserted in the Amended Complaint for breach of contract and fiduciary duties, and fraud.[6] Doc. 60, PageID 2659. Accordingly, the requirements of personal and subject matter jurisdiction have all been satisfied.

---

[5] A corporation is a citizen of the state "by which it has been incorporated" and "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

[6] The Court notes that before AmaTech filed the present Motion, it dismissed all federal claims. Thus, only the state-law claims against Linden remain. Docs. 57, 58. Here, the Court need not decide whether it should exercise supplemental jurisdiction over the state-law claims because it has original jurisdiction under 28 U.S.C. § 1332 based on diversity of citizenship. *See also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."). Venue, which is waivable, is also proper in this District for reasons already stated by this Court in its previous Order and Opinion. Doc. 48; *see generally* 28 U.S.C. § 1391(a)(2) (providing that venue is proper in a diversity of citizenship case in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred"). And, under Sixth Circuit law, venue is proper under § 1391 "in 'any forum with a substantial connection to Plaintiff's claim.'" *Gone To The Beach, LLC v. Choicepoint Servs., Inc.*, 434 F. Supp. 2d 534, 538 (W.D. Tenn. 2006) (quoting *First of Michigan Corp. v. Bramlet*, 141 F.3d 260 263 (6th Cir. 1998)). "Because venue is personal and waivable, a district court should not raise a venue objection on its own motion, absent extraordinary circumstances." *Catz v. Chalker*, 142 F.3d 279, 284–85 (6th Cir. 1998), *amended by* 243 F.3d 234 (6th Cir. 2001), *and overruled on other grounds by Cole v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006).

### B.   Claims for Relief

Having favorably resolved the questions surrounding subject matter and personal jurisdiction, the Court turns next to the question of whether AmaTech has adequately pled claims against Linden for breach of contract, breach of fiduciary duty, and fraud, such that an entry of a default judgment may be appropriate on each of those claims, keeping in mind that all factual allegations stated in the Amended Complaint—other than those relating to the amount of damages—are accepted as true. *Parallax Advanced Rsch. Corp.*, 2021 WL 3634739, at *2 (citing Fed. R. Civ. P. 8(b)(6)); *Stooksbury v. Ross*, 528 F. App'x 547, 551 (6th Cir. 2013)).

### i.   Breach of Contract.

Starting with AmaTech's breach of contract claim against Linden, the first question that must be resolved is procedural. The Engagement Letter between AmaTech and Linden for supplying legal services provides that Florida law governs. Under Ohio law, a contract's choice-of-law provision governs unless "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or . . . application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." *Schulke Radio Prods., Ltd., v. Midwestern Broad Co.*, 6 Ohio St. 3d 436, 439 (1983) (citing RESTATEMENT (SECOND) OF THE CONFLICT OF LAWS § 187 (1971)).

AmaTech and Linden both agreed that the Engagement Letter between them would "be construed under the laws of the State of Florida." Doc. 54-2, PageID 2612. The Engagement Letter identifies Orlando, Florida as Linden's place of business, therefore there

is a reasonable basis for the parties' choice here. Doc. 52-2, PageID 2611. And many of the elements of a breach of contract claim under Florida law are substantially the same as under Ohio law, thus application of Florida law would not be contrary to public policy in this state. *Compare Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009), *with Thomas v. Publrs. Clearing House*, 29 F. App'x 319, 322 (6th Cir. 2002); *see also Hirschvogel Inc. v. Allison Transmission, Inc.*, No. 2:17-cv-458, 2019 WL 2075934, at *5 (S.D. Ohio May 10, 2019) (finding choice-of-law analysis irrelevant where there was no indication that application of the law from the two relevant jurisdictions would reach a different result). For the reasons stated, Florida law governs the contract claim.

To state a breach-of-contract claim under Florida law, a plaintiff must establish: (1) the existence of a contract, (2) a material breach of that contract, and (3) damages resulting from the breach. *Vega*, 564 F.3d at 1272. AmaTech has adequately pled each of these essential elements against Linden. First, AmaTech has pled and attached a copy of the Engagement Letter to the Amended Complaint between the company and Linden that sets forth all the essential terms of the parties' agreement. Doc. 54-2, PageID 2610–12. In the Engagement Letter, Linden expressly represents that "he has no conflicts of interest with other clients of his." *Id.* at PageID 2611. Further, AmaTech has pled that for its part, the company has strictly complied with each of its duties and obligations under the Engagement Letter and fully performed all its responsibilities thereunder. Doc. 54, ¶ 210. Second, AmaTech has adequately pled that Linden materially breached the Engagement Letter. According to AmaTech, Linden breached the Engagement Letter by rendering legal services for FCS and Finn which directly conflicted with his contractual obligations to AmaTech, "all to the detriment of, and substantial damage to, AmaTech." Doc. 54, ¶ 211. Here, for example, the

Complaint avers that one of the patent applications that Linden filed with the USPTO on behalf of Finn and FCS covered the same, or substantially the same, subject matter as Linden's earlier applications made for AmaTech. *Id.* ¶¶ 128, 213. Because Linden provided the same legal services for FCS as he did for AmaTech, and those services were directly averse to AmaTech or, at a minimum, materially hindered his ongoing duty to represent AmaTech free of any conflicts, the Court finds that AmaTech has adequately pled a breach of the Engagement Letter.

Lastly, AmaTech has adequately pleaded that it suffered monetary damages as the result of Linden's alleged breach of the Engagement Letter. Along these lines, the Amended Complaint avers that Linden's failure to notify AmaTech of FCS's misappropriation of its trade secrets caused delay and substantial economic harm to AmaTech. *Id.* ¶ 215. Although AmaTech will need to provide far more specific evidence of damages in order to recover monies on this claim, accepting the allegations in the Amended Complaint at face value—or as true—as we must at this stage in the proceedings, the Court finds that AmaTech has adequately pled that the company likely suffered some amount of economic loss resulting from Linden's dual representation of its competitor involving certain of the same patents pending with the USPTO in breach of the parties' Engagement Letter for conflict-free legal representation to satisfy the standards for obtaining a default judgment on this specific claim, *i.e.*, breach of contract.

### ii. Breach of Fiduciary Duty.

Next the Court considers AmaTech's claim that Linden breached his fiduciary duty. The choice-of-law provision in the Engagement Letter requiring application of Florida law does not extend to the breach-of-fiduciary-duty claim because that claim lies not in contract

11

but in tort. *See Reengineering Consultants, Ltd. v. EMC Corp.*, No. 2:08-cv-47, 2009 WL 113058, at \*3 n.2 (S.D. Ohio Jan. 14, 2009) (stating that a contractual choice-of-law provision is "irrelevant" to which state's law governs a tort claim). A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Id.* at \*2 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Therefore, Ohio's choice of law rules governs in this case.

In tort actions, to determine which state's law governs, Ohio courts apply the balancing test set forth in the Restatement (Second) of Conflicts of Laws ("Restatement"). *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873–74 (6th Cir. 2003); *Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 341–42 (1984). According to § 145 of the Restatement, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . ." *Muncie*, 328 F.3d at 874 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)). To determine which state has the most significant relationship to the occurrence and the parties, § 145 provides four factors to be considered by courts, including: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil [*sic*] residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* These four factors "are to be evaluated according to their relative importance with respect to the particular issue." *Id.*

Linden—while being a citizen of Florida—used an Ohio business address in connection with the patent matters he represented AmaTech on. Doc. 48, PageID 2265–66. Further, former Defendant FCS's principal place of business was located within this District.

Doc. 54, ¶ 16. AmaTech also alleges that former Defendant Finn's actions arise out of purposeful activities directed at Ohio residents residing in this District. *Id.* ¶ 17. On this record, the Court finds that Ohio has the most significant relationship to this case and the parties. Thus, the tort claims in this matter will be analyzed under Ohio law.

A plaintiff alleging a breach of fiduciary duty under Ohio law must show: (1) the existence of a fiduciary duty; (2) a breach of that duty; and (3) damages proximately resulting from that breach. *Pasqualetti v. Kia Motors*, 663 F. Supp. 2d 586, 597 (N.D. Ohio 2009). Ohio courts have long recognized that "[t]here is no doubt that an attorney-client relationship imposes a fiduciary duty upon the attorney and that the attorney must conduct business in good faith." *Ivancic v. Enos*, 2012-Ohio-3639, ¶ 51 (11th Dist.) (internal citation and quotation marks omitted).

In the Amended Complaint, AmaTech alleges that Linden, as its attorney representing its interest, had a legal duty to:

> (i) place the interests of AmaTech, his client, first; (ii) act with utmost fairness toward his client; (iii) preserve the confidences of his client; (iv) make full disclosure of all material facts and matters within the scope or and bearing on his representation of AmaTech; and (v) avoid the representation interests that conflict with those of AmaTech to which AmaTech had not given informed consent.

Doc. 54, ¶ 220. AmaTech further alleges that Linden breached those duties by representing FCS and Finn in preparing, filing, and prosecuting competing patent applications for those clients to the detriment and substantial injury to AmaTech. *Id.* ¶ 221. Lastly, AmaTech pled in the Amended Complaint that Linden's breach of fiduciary duty was the proximate cause of the damages it has suffered. *Id.* ¶¶ 225–26. AmaTech asserts that the damage amount it suffered as the result of Linden's breach of fiduciary duty are substantially similar to the

damages caused by Linden's breach of the Engagement Letter to provide it with conflict-free legal representation. Doc. 60, PageID 2656.

The issue here is whether there is a duty independent of the Engagement Letter the parties entered into on August 12, 2019. This issue is made even trickier by virtue of the fact that Linden held himself out as an attorney, although he in fact had no license to practice law on the day he signed the Engagement Letter, nor has he attempted to regain his licensure anytime afterwards. The first question that must be resolved then, is even if Linden was not actually a licensed attorney on that date, did he still owe a fiduciary duty to AmaTech arising from the parties' business relationship? We think that he did.

We begin with the proposition that "[a] tort claim can proceed where 'the facts of the case show an intentional tort committed independently, but in connection with a breach of contract. . .'" *Hanamura-Valashinas v. Transitions by Firenza*, *LLC*, 2020-Ohio-4888, ¶ 43 (11th Dist.) (citation omitted). Taken one step further, Ohio courts have recognized that "[a] tort claim based upon the same actions [as] those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151 (9th Dist. 1996); *see also Infocision Mgmt. Corp. v. Found. for Moral L., Inc.*, No. 5:08CV1342, 2009 WL 2781749, at *5 (N.D. Ohio Aug. 28, 2009).

Furthermore, "under modern rules of pleading, an action for tort may be combined with and arise from the same operative facts as a breach-of-contract action. Therefore, if the facts of the case show an intentional tort committed independently, but in connection with a breach of contract, then punitive damages may be awarded. Under any circumstances,

pursuant to R.C. 2315.21, punitive damages are permitted only when the actions or omissions of a defendant demonstrate actual malice, and the plaintiff proves actual damages as a result of those actions or omissions." *Burns v. Prudential Sec., Inc.*, 2006-Ohio-3550, ¶ 99 (3d Dist.) (citations omitted). Finally, the Court is reminded that punitive damages may not be recovered in a breach of contract action, but they may be awarded in a tort action on par with other intentional torts, once proof of actual or implied malice has been shown. *Id.* ¶ 100. It is well settled that fraud and breach of fiduciary duty are included within that category of intentional torts where punitive damages may be available.

"In Ohio, a fiduciary relationship is defined as one 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority of influence, acquired by virtue of this special trust.'" *CH Liquidation Ass'n Liquidation Tr. v. Genesis Healthcare Sys.*, No. 5:18 CV 752, 2019 WL 13150910, at *5 (N.D. Ohio Mar. 22, 2019) (quoting *Hope Acad. Broadway Campus v. White Hat Mgmt., LLC*, 2015-Ohio-3716, ¶ 43). In order "[t]o determine the existence of a fiduciary relationship between two parties, courts must consider 'whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking.'" *Id.* Additionally, because the parties' representation of their relationship is not controlling, courts must look to the parties' actions to determine if a duty exists. *Id.*; *see N & G Constr., Inc., v. Lindley*, 56 Ohio St. 2d 415, 417 n.1 (1978) ("[A] description by the parties of their future relationship is not necessarily determinative when viewed in light of their actual subsequent activities."). Consequently, "there is generally no fiduciary relationship between an independent contractor and his employer unless both parties understand that the relationship is one of special trust and

confidence." *CH Liquidation*, 2019 WL 13150910, at *5. "[W]hether a fiduciary relationship exists is a question of fact dependent upon the circumstances in each case." *Id.*

AmaTech has pled sufficient allegations to demonstrate that it entered into a fiduciary relationship with Linden regardless of whether he was acting in a capacity as a licensed attorney or registered patent agent. If Linden acted as AmaTech's attorney, the Court must conduct the analysis of his potential conflict of interest while simultaneously representing AmaTech and its competitors, Finn and FCS, before the USPTO using the standards established by the Ohio Rules of Professional Conduct. *See In re Government Investigation*, 607 F. Supp. 3d 762, 773 (S.D. Ohio 2022) (Morrison, C.J.) ("[T]he analysis of the potential conflict of interest in this case begins with the standards established by the Ohio Code of Professional Responsibility."). This is so because "questions of ethics in federal cases are ultimately questions of federal law, the Court is guided by federal case law, as well as the American Bar Association['s] comments to its Model Rules of Professional Conduct and the policies underlying the particular ethical rule at issue." *Kitchen v. Aristech Chemical*, 769 F. Supp. 254, 258 (S.D. Ohio 1991). "Rule IV of the Model Federal Rules of Disciplinary Enforcement sets forth the standards for professional conduct, adopting the Code of Professional Responsibility for the highest state court in which each district court sits." *Yates v. Applied Performance Techs., Inc.*, 209 F.R.D. 143, 150 (S.D. Ohio 2002) (*citing Kitchen*, 769 F. Supp. at 258); *see generally* S.D. Ohio Civil Rules (The Court's local rules incorporate the ethical standards of the Ohio Rules of Professional Conduct).

Treating the relationship between Linden and AmaTech as between an attorney and his client, the rule in Ohio dictates that "[a]n attorney stands in a fiduciary relationship with the client and should exercise professional judgment 'solely for the benefit of the client and

16

free of compromising influences and loyalties.'" *Disciplinary Counsel v. Moore*, 2004-Ohio-734,

¶ 15 (quoting *In re Disciplinary Proceedings Against Gibson* (1985), 124 Wis.2d 466, 474–75, 369

N.W.2d 695). Further, application of the pertinent provisions of the Ohio Rules of

Professional Conduct to this situation clearly demonstrates that Linden had an actual conflict

of interest for which he could be held liable for breach of fiduciary duty. *See* Rule 1.6:

Confidentiality of Information; Rule 1:7 Conflict of Interest: Current Clients; Rule 1:8:

Conflict of Interest: Current Clients: Specific Rules[7]; *see also*, Final Order by the Director of

the United States Patent & Trademark Office resolving the disciplinary action against Gerald

E. Linden and issuing a public reprimand against Linden for his conduct in this case as a

---

[7] These sections of the Ohio Rules of Professional Conduct provide as follows:

RULE 1.6: Confidentiality of Information
(a) A lawyer shall not reveal information relating to the representation of a client, including information protected by the attorney-client privilege under applicable law, unless the client gives *informed consent*, the disclosure is impliedly authorized in order to carry out the representation....

RULE 1.7: Conflict of Interest: Current Clients
(a) A lawyer's acceptance or continuation of representation of a client creates a conflict of interest if either of the following applies:
    (1) the representation of that client will be directly adverse to another current client;
    (2) there is a substantial risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by the lawyer's own personal interests.
(b) A lawyer shall not accept or continue the representation of a client if a conflict of interest would be created pursuant to division (a) of this rule, unless all of the following apply:
    (1) the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) each affected client gives *informed consent, confirmed in writing*;
    (3) the representation is not precluded by division (c) of this rule.
(c) Even if each affected client consents, the lawyer shall not accept or continue the representation if either of the following applies:
    (1) the representation is prohibited by law;
    (2) the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding.

RULE 1.8: Conflict of Interest: Current Clients: Specific Rules
(b) Except as permitted or required by these rules, a lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent.

"patent agent registered to practice before the USPTO" who was found to have violated 37 C.F.R. §§ 1 1.104(a)(l), 11.107, 11.109(a), and 1 l. 1 16(a)(l), all of which read very similar to the Ohio Rules of Professional Conduct implicated in this case pertaining to attorney conflicts of interest.

That Linden may have dropped the attorney label for convenience and only been acting as a "patent agent" while representing AmaTech before the USPTO is, at best, a difference without a distinction. The facts pled in the Amended Complaint still demonstrate that Linden owed a fiduciary duty to AmaTech which he violated. The Engagement Letter in this instance served merely as factual support for AmaTech's claim that Linden had a fiduciary duty to provide it with conflict-free representation before the USPTO. Here, the parties agreed that Linden would act primarily for the benefit of AmaTech in the matters connected with his undertaking to prosecute its patents and represent the company before the USPTO. Further, looking more closely into the parties' actual activities before and after signing the Engagement Letter it is apparent that they well intended for a fiduciary duty to exist. As Judge Cole laid out in excruciating detail in his earlier Opinion and Order (Doc. 48), the matters Linden was charged with handling on behalf of AmaTech were highly sensitive and proprietary in nature and went to the core of its business model. More importantly, both parties well understood that the relationship was one of "special trust and confidence." That AmaTech alleges the same injuries here as it did under its breach of contract claim is also of no moment. The sources of the breach of fiduciary claim remain distinct from that of the breach of contract claim alleged in the Amended Complaint. Putting aside the Engagement Letter for the moment, the pleadings in the case establish that Linden's fiduciary duty derives from a "positive legal duty imposed by law because of the relationship of the parties, rather

than from mere omission to perform a contract." *Academic Imaging, LLC v. Soterion Corp*, 352 F. App'x 59, 64–65 (6th Cir. 2009). For these reasons, the Court finds that AmaTech has provided sufficient support such that its breach of fiduciary duty claim can be maintained against Linden separate from its breach of contract claim. Accordingly, AmaTech has met its burden of showing that the well-pleaded factual allegations in its Amended Complaint establish liability with regard to its claim for breach of fiduciary duty upon which relief by default judgment may be obtained.

### iii. Fraud.

In addition to the breach of contract and breach of fiduciary duty claims, AmaTech also asserts that Linden is liable for fraud. Doc. 54, ¶ 228. Under Ohio law, fraud occurs when there is:

> (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.

*Groob v. KeyBank*, 2006-Ohio-1189, ¶ 47 (cleaned up). Fraud claims under Rule 9(b), must satisfy a heightened pleading standard, however "[m]alice, intent, knowledge, and other conditions of a person's mind" may be alleged generally. Fed. R. Civ. P. 9(b).

AmaTech adequately pleaded each element of a claim for fraud against Linden. AmaTech alleged that Linden performed extensive legal work for AmaTech for many years, and for each of those years consistently held himself out as a licensed attorney. Doc. 54, ¶¶ 229–30. This was false, and as AmaTech alleges, during much of the time when Linden purported to be acting as AmaTech's patent lawyer, he was not actually a duly licensed

19

attorney. *Id.* ¶ 231. Alternatively, AmaTech also alleged that, although Linden represented himself as being a licensed attorney, he knew that this was false, and as such he knowingly and willfully concealed a material fact from AmaTech. *Id.* ¶¶ 232–33. According to AmaTech, this was done with specific intent to mislead the company or its representatives and to cause AmaTech to contract with him for legal services he was unauthorized to perform. *Id.* ¶ 234. These misrepresentations were material insofar as AmaTech would not have hired Linden to act as its "attorney" and would certainly have terminated his services immediately upon discovering that he no longer held a valid law license. *Id.* ¶ 235. AmaTech contends that Linden's fraud caused it significant damages, that it is entitled to punitive damages, and that, at a minimum, it is entitled to the disgorgement of all legal fees it paid Linden throughout the period of his fraud while holding himself out as an attorney when he was not licensed. *Id.* ¶¶ 237–38. Finally, according to AmaTech, it also incurred substantial legal fees when, as a direct result of trying to uncover Linden's fraud, the company was forced to hire an attorney by the name of McAndrews to take over for the representation Linden supposedly had been performing as AmaTech's patent counsel. *See* Doc. 60-1, ¶¶ 23–37. Under either of these theories, AmaTech has adequately pled a fraud claim against Linden.

One final observation warrants mention with regard to the tort claims asserted in the Amended Complaint—for fraud and breach of fiduciary—and that is the economic loss doctrine. The economic-loss rule rests on the premise "that tort liability may not be imposed for purely economic damages," because this remains the province of contract law. *Floor Craft Floor Covering v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St.3d 1, 3 (1990); *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.,* 2005-Ohio-5409, ¶ 6. And "[w]here the tort claim alleges a breach of an independent duty, it must also allege damages that are separate and distinct from the

breach of contract." *Ineos USA* at ¶ 21; *Textron Fin. Corp. v. Nationwide Mut. Ins, Co.,* 115 Ohio App. 3d 137, 151 (9th Dist. 1996) ("an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract"). The distinction is consequential for another important reason in as much as a finding of fraud or breach of fiduciary duty could entail an award of punitive damages against Linden—which AmaTech has sought in this case. Because the Court has yet to reach the question of what damages may be recoverable, AmaTech will need to remain cognizant of these well-worn rules when offering evidence of damages for each of the claims asserted.

### C. *Russell* Factors

As earlier noted, before a district court may enter default judgment in favor of a plaintiff, the court must first consider the seven-factor test developed by the Sixth Circuit in *Russell*. These include: "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell*, 34 F. App'x at 198. With one exception, these factors all support this Court granting AmaTech's Motion for Default Judgment.

First, after considering "the possible prejudice to [AmaTech] if default judgment is not granted," *JJ Rods LLC v. Horchen*, No. 2:23-cv-3052, 2024 WL 2883287, at *2 (S.D. Ohio June 7, 2024), the Court concludes that AmaTech will likely be significantly prejudiced if judgment is *not* granted. According to AmaTech, the company paid Linden $641,515 over the course of a decade for legal counsel and representation under the false premise that he was a duly licensed attorney. Given Linden's lack of participation in this lawsuit for over two years, this

Court finds that any further delay in the adjudication of the claims asserted in the Amended Complaint is without justification. Denial of AmaTech's request for default judgment would render its effort at finally resolving this matter substantially delayed, if not postponed indefinitely, while rewarding Linden's apparent efforts to avoid finality and evade liability. *See Toler v. Global College of Nat. Med.*, *Inc.*, No. 13-10433, 2016 WL 67529, at *7 (E.D. Mich. Jan. 6, 2016) (finding a class of plaintiffs were prejudiced after waiting three years for relief because defendants prolonged the litigation by failing to respond to filings).

Further, even if AmaTech was to file another lawsuit, nothing in the record suggests things would not end up any differently. By all accounts, matters would likely end in the exact same place—at the default judgment stage—given Linden's demonstrated track record of nonappearance and failing to put up hardly any defense at all to the allegations appearing in the Amended Complaint. To date the only things that Linden has done to defend against very serious allegations leveled against him by AmaTech has been to challenge personal service and jurisdiction, before unceremoniously discharging his attorney who had made an abbreviated appearance on his behalf. These are hardly the acts of someone attempting to mount a serious and sincere defense. See Docs. 49, 50. The "[e]ffective judicial administration requires that at some point disputes be treated as finally and definitively resolved." 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2693 (3d ed. 2022). Thus, like other courts who have been presented with similar facts, this Court concludes that little harm would come to Linden, and if prejudiced, he will have brought it upon himself. But serious, unfair prejudice would result to AmaTech under the first *Russell* factor should this case suffer from any further delays caused by Linden's unexplained decision to absent himself from these proceedings. *See Marelli Automotive Lighting*, *USA, LLC v.*

22

*Industrias BM de Mexico, S.A. de C.V.*, No. 20-10331, 2021 WL 5121273, at *2 (E.D. Mich. Nov. 4, 2021) ("The preferred outcome of a decision on the merits is not possible when a party refuses to participate.").

As for the second and third *Russell* factors, a party's default is deemed to constitute a concession of all well pleaded allegations of liability. Accordingly, the Court finds Linden liable for the remaining claims asserted against him by AmaTech in the Amended Complaint. *See*, *Parallax Advanced Rsch. Corp.*, 2021 WL 3634739, at *2 (citing Fed. R. Civ. P. 8(b)(6)); *Stooksbury v. Ross*, 528 F. App'x 547, 551 (6th Cir. 2013)) (all factual allegations stated in the complaint—other than those relating to the amount of damages—are accepted as true); *see also supra,* Section II.B. Linden breached his fiduciary duty and the Engagement Letter to represent AmaTech free of any conflicts with any other clients when he took on the job of representing FCS and David Finn, AmaTech's former CEO and FCS, before the USPTO at the same time and with regard to many of the same patent applications, in some cases, without ever disclosing this conflict or obtaining a waiver from AmaTech. *See supra* Section II.B.ii.

As for the fourth *Russell* factor, the amount requested by AmaTech—over $800,000— without a doubt is substantial, a fact that militates against granting a default judgment. *See Russell*, 34 F. App'x at 198 (finding a substantial sum of $500,000,000 to weigh against default judgment).[8] However, as much as the fourth *Russell* factor disfavors granting a default judgment in this case, the fifth prong weighs just as heavily in favor. Linden has not placed any disputed facts before the Court—he has only challenged the Court's personal jurisdiction and service over him, which were carefully considered and ultimately rejected. *See* Doc. 48.

---

[8] The Court notes that it will only consider awarding damages after further briefing and documentation or a hearing on damages. *See infra*, Section II.D.

Moreover, Linden has had approximately two years to engage with this litigation and dispute each and every one of AmaTech's allegations leveled against him in the Amended Complaint head on. Yet, he has elected instead to again sit this one out. Linden's lack of interest in defending himself against serious charges leveled against him not only here, but also in proceedings before the USPTO (at which he admitted to having had an inappropriate conflict of interest as a patent registered agent in violation of several Codes of Federal Regulations) coupled with the more than two years that have passed since the Clerk's Default strongly supports the Court entering a default judgment.

The sixth factor, excusable neglect, does not exist in the case since Linden, though briefly, has made an appearance in this lawsuit. But, as noted, Linden has neglected to respond to the Complaint, the Clerk's Default, the Motion for Default Judgment, or to attend conferences since moving to dismiss on a jurisdictional basis. In these situations, the rule is quite plain, and as one court in this district has put it: the defense under the sixth prong of *Russell* is unavailable where a defendant has failed to explain why they have not timely responded to a plaintiff's motion. *See PNC Equip. Fin., LLC v. Keller*, No. 1:12-cv-594, 2014 WL 11515877, at *4 (S.D. Ohio May 29, 2014). That is clearly the case here.

As for the last of the *Russell* factors the Court must consider, "[w]hen a party's nonparticipation has prevented the resolution of a case on the merits, the preference for a resolution on the merits becomes outweighed by the needs of the litigants actually before the Court." *Bds. of Trs. of the Ohio Laborers Bens. v. Karnak Concrete LLC*, No. 2:20-cv-1210, 2024 WL 3343070, at *5 (S.D. Ohio July 9, 2024). Here, too, Linden's nonparticipation in the litigation—his failure over a protracted period to answer and defend against the breach of contract claim, violation of fiduciary duty claim, and fraud claim asserted against him—has

24

prevented the resolution of a case on the merits, such that the preference for a decision on the merits has become outweighed by the needs of the litigant actually before the Court, AmaTech, for a decision to be finally reached. With all but one of the *Russell* factors weighing heavily in favor of AmaTech, the Court finds that default judgment against Linden is warranted in this case. Given this determination, the last thing the Court must decide is how much, if any, to award AmaTech in monetary damages, predicated on the claims asserted in the Amended Complaint, which Linden failed to respond to, prosecute, or defend against in over two-years.

### D. Damages.

With regard to awarding damages in cases of default judgment, the rule is as follows: "[W]hile liability may be shown by well-pleaded allegations, the district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *DT Fashion LLC v. Cline*, No. 2:16-cv-1117, 2018 WL 542268, at *2 (S.D. Ohio Jan. 24, 2018) (quoting *United States v. Parker-Billingsley*, No. 3:14-cv-307, 2015 WL 4539843, at *1 (S.D. Ohio Feb. 10, 2015)). Under Rule 55(b)(1), a court may enter judgment by default when the claim is for a sum certain, including sums calculable "from the terms of a written document such as a contract or promissory note." *Dailey v. R & J Comm'l Contracting*, No. C2-01-403, 2002 WL 484988, at *3 (S.D. Ohio Mar. 28, 2002) (citing Fed. R. Civ. P. 55(b)(2)). A court may do so without a hearing if damages are "capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Parker-Billingsley*, 2015 WL 4539843, at *1 (quoting *Wilson v. D & N Masonry, Inc.*, No. 1:12-cv-922, 2014 WL 30016, at *1 (S.D. Ohio Jan. 3, 2014)); *see also Meyer v. City of Cincinnati*, 943 F.2d 52 (6th Cir. 1991) (noting that under Rule 55(b)(1), a district court is "required to enter a default

judgment" in the amount computable to a sum certain). Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). While all reasonable inferences from the evidence presented are drawn in the moving party's favor, *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981), "[t]he burden is on the plaintiff to establish its entitlement to recovery." *Bravado Int'l Grp. Merchandising Serv.*, 655 F. Supp. 2d at 189 (*citing Greyhound*, 973 F.2d at 158).

To support its damages claims, AmaTech has provided a declaration from Mustafa Loyta, its former Chief Technical Officer who held that position from July 2016 to December 2020. Loyta's declaration states that AmaTech is requesting: (1) $641,515.00 for patent-related legal counsel paid to Linden from April 2011 to April 2021; (2) $137,435.63 for legal services rendered related to Linden's malfeasance paid to McAndrews, Held & Malloy, Ltd., from April 12, 2021, to June 28, 2021; and (3) $23,281.00 in fees incurred related to making the Motion for Default Judgment and responding to Linden's Motion to Dismiss. *See* Doc. 60-1, PageID 2670–73. Taken together, AmaTech seeks $802,231.63 in total damages in connection with Linden's conduct alleged in the Amended Complaint. *Id.* at PageID 2673. While AmaTech has provided a declaration from a former high-level employee with knowledge of attorney's fees paid to Linden, it has not provided any "documentary evidence" of those damages, nor has it sufficiently detailed all the costs and expenses associated with those fees.

As to the $641,515.00 in fees allegedly attributable to Linden, the declaration merely states that "[d]irectly as a result of Linden's malfeasance . . . AmaTech paid him $641,515 for patent-related legal counsel from April 2011 until AmaTech terminated its relationship with

him in April 2021." Doc. 60-1, PageID 2670. While this is a definite figure, AmaTech has provided no "documentary evidence" or "detailed affidavits" concerning this figure. *See Surge Staffing, LLC v. Eva Logistics, Inc.*, No. 2:23-cv-00873, 2023 WL 7130675, at *4 (S.D. Ohio Oct. 30, 2023) (court found evidentiary evidence of damages on breach of contract when the plaintiff provided an affidavit from the plaintiff's CFO, invoices for the defendant, and a table outlining the damages).

The legal fees requested by AmaTech incurred to investigate Linden and to litigate this case suffer from similar flaws. The Court has no way of determining whether the attorney's fees requested here are legally or factually justified or reasonable. "The party seeking attorney fees bears the burden of documenting his entitlement to the award." *Id.* at *11 (quoting *Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999)). The party seeking fees must justify its request with *specific evidence* detailing the number of hours worked and the appropriate hourly rate. *Miller v. Caudill*, 936 F.3d 442, 452 (6th Cir. 2019). When awarding attorney's fees, the Court "begins by determining the requesting party's lodestar, which is the proven number of hours reasonably expended on the case by an attorney, multiplied by [the attorney's] court-ascertained reasonable hourly rate." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). AmaTech has yet to provide the Court with an affidavit or other documentary evidence describing in detail the services rendered and the time spent that allows the Court to examine the number of hours worked by its attorneys and their hourly rate billed.[9]

---

[9] The Court is also concerned that the declarant was not employed by AmaTech for the entirety of AmaTech's investigation into Linden's malfeasance and the present litigation before the Court. Loyta has not worked at AmaTech since December 2020, but the relationship with Linden ended in April 2021, which is when legal services related to Linden's malfeasance were initiated. If Loyta has reviewed documentary evidence related to the fees requested, the declaration provided to the Court does not say as such or provide such documentary evidence.

At bottom, however, AmaTech's evidence relative to each of the claims for which recovery is still being sought—breach of contract, breach of fiduciary duty, and fraud—lacks the necessary specificity, adequate documentation, and detail, and does not allow the Court to ascertain the actual damages Linden should be required to pay within any reasonable degree of certainty. AmaTech is therefore **ORDERED** to submit on or before December 20, 2024, specific evidence, including any documentation and detailed affidavit(s) evincing the amount of damages it says its owed from Linden consistent with the default judgment rendered on each of the claims in the case. If AmaTech fails to submit the required evidence needed to satisfy its burden of proof, the Court may set this matter for an evidentiary hearing to determine what, if any, monies may be owed to AmaTech on each of these claims.

## III.    CONCLUSION

Having carefully considered the entire record, including all the pleadings and arguments of counsel, and being fully advised in the premises, the Court finds that AmaTech's Motion for Default Judgment (Doc. 60) is **GRANTED in part and DENIED in part**. Consistent with this **OPINION and  ORDER** it is suggested that AmaTech submit specific evidence showing the quantum of damages and the basis upon which those damages are sought, including any documents, detailed affidavit(s), and supplemental briefing by December 20, 2024, at which time the Court will decide whether AmaTech has met its burden of proof to establish recovery or whether further evidentiary proceeding will be ordered.

**IT IS SO ORDERED.**

November 22, 2024    

Jeffery P. Hopkins
United States District Judge